UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN M. SHUTTS,

                **Plaintiff,**

      v.                              1:01-CV-1993
                                      (FJS/DRH)

FIRST UNUM LIFE INSURANCE
COMPANY OF AMERICA, and
UNUMPROVIDENT CORPORATION,

                **Defendants.**
_____

APPEARANCES                                           OF COUNSEL

**FLINK, SMITH & ASSOCIATES, LLC**         **JAY A. SMITH, ESQ.**
23 British America Boulevard                 **JEFFREY D. WAIT, ESQ.**
Latham, New York 12110
Attorneys for Plaintiff

**McNAMEE, LOCHNER, TITUS &**            **MICHAEL J. HALL, ESQ.**
**WILLIAMS, PC**
75 State Street
Albany, New York 12201-0459
Attorneys for Defendants

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff is seeking a declaration from this Court, pursuant to 28 U.S.C. §§ 2201-2201, that he is entitled to long-term disability benefits pursuant to the provisions of the policy that Defendants issued to him.

During 1999, Plaintiff was employed as President of the John I. Shutts, Agency, Inc.

Defendants issued long-term disability and group health insurance policies to Plaintiff's employer. The policies are governed by 29 U.S.C. § 1001 *et seq.* ("ERISA"). The long-term disability policy's ("Policy") effective date was October 1, 1998.

Plaintiff suffers from organic brain syndrome. On July 19, 2000, he applied for long-term disability benefits, listing April 1, 1999, as his date of disability.

Defendants, relying upon several pieces of written correspondence and telephone interviews, denied Plaintiff's claim for long-term disability benefits on the ground that Plaintiff was not in active employment prior to the effective date of his policy and, as a result, Plaintiff's waiting period, as established under the policy, was never satisfied.

Plaintiff appealed Defendants' decision on December 5, 2000. Defendants affirmed their prior determination and upheld their denial, at which time they also alleged that Plaintiff had failed to provide timely notice of his alleged disability as the policy required.

After exhausting his administrative remedies, Plaintiff commenced this action, seeking a declaration from the Court that he is entitled to long-term disability coverage. Eventually, Defendants filed a cross-motion for judgment on the administrative record. This Court, after considering the parties' submissions and the applicable law, denied both parties' motions and remanded the case to Defendants "for further investigation of all relevant and necessary information, to consider all relevant evidence and apply the appropriate standards, and reach a determination as to whether Plaintiff is eligible for long-term benefits within the meaning of the plan . . . ." *See* Dkt. No. 34 at 18. After completing their review on remand, Defendants again denied coverage to Plaintiff and filed the present renewed motion for judgment on the

administrative record.[1] On May 2, 2005, the Court heard oral argument in support of, and in opposition to, this renewed motion. The following constitutes the Court's written determination of the pending motion.

## II. DISCUSSION

### A. Standard of review

The court "reviews an ERISA plan administrator's decision to deny benefits 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits.'" *Henar v. First Unum Life Ins. Co.,* No. 02 Civ. 1570, 2002 WL 31098495, *3 (S.D.N.Y. Sept. 19, 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). However, when the policy gives the plan "administrator discretionary authority, the court reviews the decision under an 'arbitrary and capricious' abuse of discretion standard." *Id.* (citing *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000)). In the present case, both parties agree that the language of the policy grants discretionary authority to Defendants and that the arbitrary and capricious standard applies. Accordingly, the Court will use that standard when reviewing Defendants' motion.

The court's review under an arbitrary and capricious standard "is limited to the administrative record," *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995), and is "highly deferential to a plan administrator," *Martin v. E.I. DuPont de Nemours & Co.*, 999 F.

---

[1] Although a motion for judgment on the administrative record is not authorized in the Federal Rules of Civil Procedure, courts often treat such motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Muller v. First Unum Life Ins. Co.,* 341 F.3d 119, 124 (2d Cir. 2003) (citation omitted).

Supp. 416, 422 (W.D.N.Y. 1998). Moreover, when applying this standard a court "may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (quotation and other citation omitted). "'Substantial evidence in turn "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance."'" *Maida v. Life Ins. Co. of N. Am.,* 949 F. Supp. 1087, 1091 (S.D.N.Y. 1997) (quotation omitted).

As stated, Defendants, after further review of the evidence as the Court directed, continue to deny coverage of Plaintiff's claim for disability benefits.

**B.     Plaintiff's employment**

The central issue in this case is whether Plaintiff was engaged in active employment at the time he claims to have become disabled. The Policy defines "Active employment" as follows:

> [the employee is] working for [his] Employer for earnings that are paid regularly and that [the employee is] performing the material and substantial duties of [his] regular occupation. [The employee] must be working at least the minimum number of hours as described by the Eligible Group(s) in each plan.

*See* FULCL 00196. The minimum number of hours of active employment that the Policy requires is twenty hours per week. *See* FULCL 00169. In addition, Plaintiff's employer's coverage under the Policy became effective on October 1, 1998. *See id.* The requisite waiting period lasted until the "first of the month following the date [the employee] entered an eligible group," which in this case was October 1, 1998. *See id.* During the waiting period, the employee

must "be in continuous active employment in an eligible group." *See id.* In other words, in order for Plaintiff to be covered under the Policy, he must have demonstrated to the administrator that he worked at least twenty hours a week during the waiting period, i.e., between October 1, 1998 and November 1, 1998. Plaintiff has the burden of proving to the administrator that he is entitled to the benefits under the policy. *See MacMillan v. Provident Mut. Life Ins. Co. of Phila.,* 32 F. Supp. 2d 600, 615 (W.D.N.Y. 1999) (citations omitted).

When the Court addressed the parties' previous motions, it remanded the case to Defendants in order for them to obtain and review additional, relevant evidence to determine whether Plaintiff is eligible for benefits under the terms of the Policy. Specifically, the Court identified four areas of additional, relevant evidence that was needed: (1) "what the material and substantial duties of Plaintiff's job are;" (2) "when and how often Plaintiff worked;" (3) "at what point, if any, [Plaintiff] stopped working the minimum twenty hours per week;" and (4) "when, if ever, [Plaintiff] ceased performing those duties in their entirety." *See* Dkt. No. 34 at 17.

### *1. Plaintiff's job duties and activities*

In compliance with the Court's March 24, 2004 Memorandum-Decision and Order, Defendants conducted additional research into Plaintiff's daily activities. *See* Dkt. No. 34 at 17. Specifically, Defendants retained an independent company, GENEX, to conduct a labor market survey to determine the job duties of a president of a small insurance agency. GENEX found that the normal duties of a person in such a position included selling insurance policies, measuring properties, visiting clients, performing human resources activities, doing computer work, signing checks, and tracking activities by computer log. *See* FULMS 00023. Plaintiff does not dispute

that these are all, in one way or another, duties that presidents of small insurance agencies generally conduct.[2]

### *2. When and how often Plaintiff worked and when he stopped working the minimum twenty hours a week*

Defendants assert that the administrative record suggests that Plaintiff had not actively worked for more than three years prior to filing his claim. In support of their assertion, Defendants present statements that Plaintiff made during a telephone interview, Plaintiff's correspondence, and a statement from Ronnie Schnapp, Plaintiff's assistant, suggesting that Plaintiff was watching television, playing solitaire, going to the bank, and, occasionally, taking pictures for the business. *See* FULCL 00229-00231, 00262, 00417, & 00458-00462. Defendants have also submitted evidence that Plaintiff represented to the Veterans Administration that he was disabled before Defendants issued the Policy to him. *See* FULCL 00418-00421.

Moreover, Defendants argue that Plaintiff did not provide them with any additional materials during their most recent investigation to prove that he worked at least twenty hours a week between October 1, 1998, and April 1, 1999. Defendants requested several different types of materials from Plaintiff, including appointment books, any documented computer activity that Plaintiff conducted, correspondence and memoranda that Plaintiff drafted and/or signed, policy applications and refunds that Plaintiff completed and/or signed, photographs and/or

---

[2] Plaintiff's only disagreement with the listed duties is the extent to which all presidents of small insurance agencies perform each one. For example, Plaintiff notes that not all presidents track their progress by computer and that, although it is true that presidents sign and draft documents, they produce little paperwork. Nonetheless, although the degree of involvement in each of these activities varies from president to president, Plaintiff agrees that these are regular duties that a president of a small insurance agency performs.

measurements of properties that Plaintiff took, and any other documentation that would support Plaintiff's contention that he was engaged in active employment prior to his disability. *See* FULMS 000033-000030 & 000099-000097. In response, Plaintiff produced several fax cover sheets, correspondence, and insurance policies that he had signed. Plaintiff also submitted letters from two clients stating that he had worked on their policies during the relevant time period and letters from both of his assistants stating that he had worked at least twenty to thirty hours per week during the relevant time period. *See* FULMS 00092-00091.

Since Plaintiff presented no direct evidence regarding the hours he worked each week, Defendant relied on statements that Plaintiff and his assistant Ms. Schnapp made, asserting that Plaintiff was disabled and was unable to work. For example, in a March 31, 1999 letter that Plaintiff wrote to the Department of Veterans Affairs, he asserted that all he did at work was "watch television, play solitaire on [his] computer, go to the bank, the post office, and take pictures of houses the agency insures." *See* FULCL 00230. In addition, Plaintiff stated that he was unable to concentrate, that he had difficulty copying files and taking down phone numbers, that he was unable to remember facts about specific policies, that he could not complete policies without assistance, and that he was unable to retain accounts or call on new ones. *See* FULCL 00229-00229. Moreover, in a June 11, 1998 letter to the Chief of Veterans Benefits and Services Division, Plaintiff stated that in the previous year he doubted that he had worked more than 30% of the time and that he was only able to go to his office an hour or two a day. *See* FULCL 00420. In addition, in an October 24, 2000 telephone conversation that Defendants had with Ms.

Schnapp,[3] she told them that April 1999 was not really the last day that Plaintiff had worked, but rather that he had not worked in more than three years and that all she did was take him off of the payroll at that time. *See* FULCL 00262.

Plaintiff argues that Defendants' reliance on this evidence is insufficient to show that he was not working the requisite twenty hours a week because the Court had held in its previous Memorandum-Decision and Order that the original record was inadequate to determine this fact. Instead, Plaintiff argues that the letter that Ms. Schnapp wrote to Defendants during the course of the most recent investigation is direct evidence that Plaintiff was working at least twenty to thirty hours a week between October 1998 and April 1999. *See* FULMS 00071. Plaintiff also presents the affidavit of Amy Scott, another employee at the insurance agency, who states that Plaintiff worked "at least 20 hours a week throughout 1998 until the Spring of 1999." *See* FULMS 00094. Plaintiff asserts that Defendants' disregard of this evidence is arbitrary and capricious.

In response, Defendants argue that they disregarded Ms. Schnapp's most recent letter because the statements in that letter were directly contrary to her statements in the telephone conversation that they had with her in October 2000. *See* FULCL 00262 & FULMS 00071.

It is clear from the record that Ms. Schnapp's letter is in direct contradiction to her previous statements. Defendants, therefore, did not act arbitrarily in questioning the reliability of the statements found in that letter. In addition, it is clear from the record and Defendants' additional investigation that Plaintiff created two different versions of his condition. When corresponding with the Veterans Administration regarding his disability, Plaintiff painted a

---

[3] Although the record shows that the telephone conversation was with a Ronnie Sisson, Ronnie Sisson and Ronnie Schnapp are the same person.

picture of an individual who could not function in the workplace and that any contributions he made to his business were minuscule. On the other hand, the evidence he presented to Defendants during their additional investigation shows an individual who, although suffering from a disability, was able to adequately run an insurance agency with the help of his assistants.

The fact remains that Plaintiff has failed to present any evidence that he was actively working twenty hours a week from October 1, 1998, to April 1, 1999. Although Plaintiff would have the Court believe that it is Defendants' duty to produce such evidence, the law is well-established that it is Plaintiff's burden to show that he is entitled to disability benefits. *See MacMillan,* 32 F. Supp. 2d at 615 (citations omitted).

Therefore, despite Plaintiff's assertion to the contrary, the Court finds that Defendants conducted a thorough investigation. They hired an independent company to determine the job duties that a president of a small insurance agency performs and issued repeated requests to Plaintiff for specific documents (policies and correspondence that Plaintiff had signed, calenders showing Plaintiff's schedule, etc.), as well as any documents Plaintiff deemed appropriate to show the amount of time he worked between October 1, 1998, and April 1, 1999. Plaintiff, however, was unable to produce any evidence that directly showed that he worked twenty hours a week during the applicable time period. Accordingly, the Court finds that Defendants' denial of benefits to Plaintiff was not arbitrary and capricious.

### III. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein and at oral argument, the

Court hereby

**ORDERS** that Defendants' renewed motion for judgment on the administrative record is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: May 26, 2005
       Albany, New York

*/s/ Frederick J. Scullin, Jr.*
Frederick J. Scullin, Jr.
Chief United States District Court Judge